UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
KATHRYN NOLAN GRABER,

                    Plaintiff,

        -against-

CAYUGA HOME FOR CHILDREN, D.B.A.
CAYUGA CENTERS, EDWARD HAYES,

                    Defendants.
------------------------------------------------------------------ X

Case No.: 5:24-cv-468 (DNH/TWD)

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Kathryn Nolan Graber, by and through her attorneys, Harding Mazzotti, LLP, hereby files this Complaint against Defendant, Cayuga Home for Children, d.b.a. Cayuga Centers ("Cayuga"), Cayuga CEO Edward Hayes ("CEO Hayes"), to allege upon knowledge concerning her own experience, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. This action is brought to remedy the retaliatory, unlawful, and wrongful constructive termination of Plaintiff, by the Defendants, following Plaintiff participating in an age discrimination investigation against CEO Edward Hayes, made by one of Cayuga's Chief Operating Officer, Ann Sheedy ("Ms. Sheedy".) Plaintiff also asserts a claim of hostile work environment harassment, which resulted in extreme emotional distress necessitating care and treatment by healthcare professionals.

2. Plaintiff seeks declaratory relief, monetary relief, punitive damages, and attorneys' fees and costs.

1

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of Plaintiff's claims pursuant to 28 U.S.C §1331, as her claims arise under the laws of the United States, namely Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Laws ("NYSHRL").

4. This Court has jurisdiction over both the parties and the subject matter of this action pursuant to 28 U.S. Code § 1332(a) and the defendant is a business in the State of New York. Furthermore, the amount in controversy exceeds $75,000 and the Defendants conducted business in and/or committed tortious acts within the State of New York.

## ADMINISTRATIVE REQUIREMENTS

5. On June 15, 2023, Plaintiff, through counsel, filed a Charge of Discrimination in violation of Title VII with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 525-2023-01744.

6. On January 2, 2024, Plaintiff submitted a letter to the EEOC requesting that they issue a Dismissal and Notice of Right to Sue.

7. On January 5, 2024, the EEOC issued a Notice of Right to Sue (Issued on Request) which is annexed hereto as **Exhibit "A".** Plaintiff's Complaint is timely filed within 90 days of receipt of the Right to Sue.

8. Further, simultaneously with the filing of this Complaint, Plaintiff will serve a copy of this Complaint on the New York State Attorney General to fulfill any and all administrative prerequisites with respect to her NYSHRL claims alleged herein.

## THE PARTIES

9. That at all times hereinafter mentioned, Plaintiff is a resident of Auburn, New York, County of Cayuga.

10. That at all times hereinafter mentioned, Defendant, Cayuga Home for Children, d.b.a. Cayuga Centers, is a domestic not-for-profit organization, organized and existing under the laws of the State of New York with a business address of 101 Hamilton Avenue, Auburn, NY 13021.

11. CEO Hayes was, and still is, upon information and belief, the Chief Executive Officer of Cayuga Centers.

## STATEMENT OF FACTS

12. Ms. Nolan Graber was hired by Cayuga on July 31, 2015, as a Recruiter, and was promoted to Vice President of Human Resources in 2022. Ms. Nolan Graber remained with Cayuga Centers as VP of Human Resources until her employment was constructively terminated on November 8, 2023. Agency records will reflect that, during her almost eight years with the Agency, Ms. Nolan Graber had an excellent performance history and her performance reviews have always been above par. She was never disciplined or told of any negative performance.

13. Despite her evident history of hard work and dedication to Cayuga Centers, Ms. Nolan Graber was subjected to a hostile work environment in retaliation for Ms. Nolan Graber's role in a discrimination investigation of CEO Hayes.

14. CEO Hayes has complete control over the Agency, and the Board of Trustees has failed to ever take any action regarding complaints about CEO Hayes.

## THE RETALIATION

15. Ms. Nolan Graber's claims of retaliation are predicated on Ms. Nolan Graber's involvement in a discrimination investigation that occurred in late February through March 2023,

following complaints made by Defendant's Chief Operating Officer, Ann Sheedy ("Ms. Sheedy") against CEO Hayes.

16. Title VII forbids an employer from retaliating against an employee… because of the employee's participation in "an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The NYSHRL also makes it illegal for an employer to "discharge, expel, or otherwise discriminate against a person for opposing discriminatory practices, filing a complaint, testifying, *or assisting in any proceeding* related to enforcement of the NYSHRL." *Id* (*emphasis added*).

17. On February 20, 2023, CEO Hayes was put on administrative leave as a result of a discrimination complaint made by Ms. Sheedy. The complaint was provided to the Board of Trustees, and the Board initially suggested that Ms. Nolan Graber's office investigate the complaint.

18. Ms. Nolan Graber was shocked at the request, not only because she was involved in receiving the complaint from Ms. Sheedy, but also because investigating her own boss's alleged discriminatory conduct would surely be a conflict of interest and give the appearance of bias. During a conference call with just a few Board Members, wherein an initial discussion regarding the necessary investigation was held, one Board member requested that the Agency handle this "quickly & internally" and mocked Ms. Sheedy's claims. He also firmly stated that the Agency was not to suspend CEO Hayes because it would "piss people off." Following that request, another Board member removed Ms. Nolan Graber, Christopher Rogers (Vice President of Human Resources, NYC), and Elizabeth Palin (Chief Financial Officer, "Ms. Palin"), from the call.

19. Eventually, at the insistence members of the Agency's Human Resources team, and to avoid real or perceived conflicts of interest, the law firm of Bond, Schoeneck & King PLLC ("BSK") was retained to investigate Ms. Sheedy's claims against CEO Hayes[1].

20. On March 3, 2023, BSK attorneys, Nicholas Jacobson, and Travis Talerico, interviewed Ms. Nolan Graber as part of that investigation. At the outset of the interview, Ms. Nolan Graber informed the attorneys that she was extremely concerned that the interview would result in retaliatory actions against herself, her husband, or both. The attorneys responded to her concerns by advising her that she had to cooperate and assured her that the interview was a legally protected activity. As part of that interview, Ms. Nolan Graber was required to divulge information about communications between herself and CEO Hayes that could certainly be construed as supporting Ms. Sheedy's claims of discrimination. As described below, Ms. Nolan Graber's fears predictably became reality within days of CEO Hayes' return to the office.

21. On March 13, 2023, after the BSK firm declared Ms. Sheedy's claims unsubstantiated, CEO Hayes returned to Cayuga Centers. In addition to Ms. Nolan Graber, who had provided information regarding the discrimination claim, the complainant, Ms. Sheedy, was also still employed. Thus, clearly concerned about the fate of Ms. Nolan Graber and Ms. Sheedy, the day before CEO Hayes' return, Ms. Palin (Defendant's Chief Financial Officer and Ms. Nolan Graber's direct supervisor), inquired to the Board as to what system of checks and balances would be put into place to ensure that retaliation did not occur. Unfortunately, Chairman of the Board, Faye Hylton, did not take the concern seriously, or perhaps misjudged how CEO Hayes would react, and stated "he returns with full power and authority", or words to that effect.

---

[1] The same firm also was charged with "investigating" Ms. Nolan-Graber's complaint that stemmed from the firm's investigation and interview of her in the Sheedy complaint.

22. In a shocking display of hubris, on CEO Hayes' very first day back at work, he emailed the Agency's Chiefs (also known as the C-level employees or C-suite) and advised them that the Board was now requiring him to "insert himself at a greater level in decision making", and stated that the Board felt it was "important at [that] point in time", despite it being "a reversal from the last half dozen years in which [he] worked to step away from the day to day".

23. Following the above email, CEO Hayes proceeded to cancel weekly "Chief Meetings", which served as Agency "check-ins" between C-level employees and CEO Hayes and provided time for collaboration on important issues; disinvited the Chiefs from Board Meetings going forward; and, most shockingly, stripped all high-level employees (excluding himself) of independent decision making and authority. Indeed, as of that point, C-level executives could not even exact progressive discipline as to an employee working under them without CEO Hayes' review and approval.

24. CEO Hayes literally and unilaterally (although, allegedly with some encouragement from the Board) removed all checks and balances on, and potential obstacles to, his own power in the Agency. He then proceeded to flex this power to the detriment of Ms. Nolan Graber.

25. On March 15, 2023, only two days following CEO Hayes' return from leave, he sent an email to Ms. Palin (Plaintiff's boss) declaring the need to consider whether to retain Mr. Graber, (Ms. Nolan Graber's Cayuga-employed husband) in his position, stating that he is "pricey." It surely goes without saying that Mr. Graber was not given a pay raise during CEO Hayes' suspension, and thus was no "pricier" than he had been prior to his wife's participation in the aforementioned investigation. Clearly, CEO Hayes was going to punish Ms. Nolan Graber, both directly and through Mr. Graber- actions that, in combination, would financially devastate a

married couple with two small children. This was only the beginning of CEO Hayes' course of retaliation.

26. Five days following his return from leave, CEO Hayes sent an email to Ms. Nolan Graber stating the "Board has asked that [he] initiate a review of our HR structure and staffing." There is absolutely no doubt that this email was intended to intimidate and threaten Ms. Nolan Graber. If the Board had so instructed CEO Hayes, or if CEO Hayes had a legitimate, non-retaliatory interest in reviewing and restructuring the Human Resources Department, then the CFO, who oversees the HR Department, would be involved in this "review" process, and members of HR leadership would be invited to attend Personnel Committee meetings and provide their input. That, however, was not the case. And, as with the threats to Mr. Graber's job, no such mention of HR's "structure and staffing" was made prior to Ms. Nolan Graber's participation in BSK's investigation of CEO Hayes. The timing of CEO. Hayes' thinly veiled threat makes it clear that the only restructuring he was interested in was removing Ms. Nolan Graber from her position, as direct retaliation for her involvement in the protected activity investigation.

27. Shortly thereafter, during an April 5, 2023, "all staff" meeting, CEO Hayes inappropriately and viciously voiced his negative opinions of the investigative and administrative leave process involving him. He vocally blamed Ms. Nolan Graber and her department for his "extended time" on leave, by complaining that it took a week for her department to engage a law firm for the investigation. Not only did CEO Hayes seek to publicly attack and intimidate Ms. Nolan Graber, but he also did so with hundreds of other employees watching, sending the message that he would not tolerate any challenge to any action he took - from anyone.

28. Furthering the hostility of the environment created by CEO Hayes for Ms. Nolan Graber, since his return on March 13, 2023, CEO Hayes refused to speak directly with Ms. Nolan Graber in any setting, and instead treated her as if she already did not exist.

29. Ultimately, in addition to the above threats and intimidation, CEO Hayes quickly and relentlessly stripped Ms. Nolan Graber of her authority and duties. CEO Hayes stripped her authority to oversee the daily tasks related to the performance of her assigned responsibilities. He directly rerouted many of her duties to the Vice President of Human Resources, NYC, Christopher Rogers ("Mr. Rogers"), including the management of daily tasks for the Agency's offices in Florida, Delaware, and Upstate New York. Prior to CEO Hayes' return from administrative leave on March 13, 2023, Mr. Rogers was not tasked with these roles.

30. All of Ms. Nolan Graber's previous contact with CEO Hayes and other executive leadership was entirely re-routed to Mr. Rogers. At CEO Hayes' direction, staff members that had previously reported to Ms. Nolan Graber, prior to CEO Hayes' return to work, now predominantly reported to Mr. Rogers. This was the case up until the time of Ms. Nolan Graber's constructive termination on November 8, 2023.

31. CEO Hayes effectively eliminated Ms. Nolan Graber while she was still present. It would be a sardonic understatement to say that "the writing was on the wall" for Ms. Nolan Graber.

32. On April 30, 2023, Ms. Nolan Graber retained counsel to contact Cayuga's Board of Trustees regarding the retaliation described herein.

33. As a result of that correspondence, Bond, Schoeneck & King PLLC ("BSK"), the exact same law firm that Cayuga had hired to conduct the "internal" investigation into CEO Hayes, contacted Ms. Nolan Graber's attorneys. BSK's attorneys demanded to interview Ms. Nolan Graber about her retaliation complaint, in spite of the fact that they were involved in the first matter that resulted in the retaliation at issue.  However, what did *not* occur because of the correspondence to Cayuga's Board of Trustees, was any corrective action against CEO Hayes.  CEO Hayes was not put on leave, he remained in control of Ms. Nolan Graber and Mr. Graber, and, in fact, his

8

retaliation against them only *increased,* as he was now aware of their attorney's correspondence to the Board of Trustees.

34. On May 17, 2023, rather than risk termination for insubordination, Ms. Nolan Graber and the undersigned appeared for a video interview with BSK attorneys, and Ms. Nolan Graber answered their questions. The interview made it quite clear that BSK had discussed the Nolan/Graber retaliation claims with either CEO Hayes or someone on CEO Hayes' behalf; the interview was an interrogation of Ms. Nolan Graber, and the interviewing attorney treated the matter like a deposition, questioning Ms. Nolan Graber about other things beyond the complaint of retaliation, as if he were an adversary. It should be noted that a BSK associate was present in the room with the interviewing attorney, and we were told she was recording the interview. Whether she did so by audio recording or by hand is unknown.

35. Ms. Nolan Graber, overwhelmed by stress and duress from this matter, began to experience extreme physical manifestations in her physical health and had to undergo medical and psychological treatment for these manifestations.

36. On July 24, 2023, Mrs. Nolan Graber was forced by her health conditions to take leave under FMLA, a step which was directly caused by the retaliation of the Defendants. During her FMLA leave, Ms. Nolan Graber received reduced wages and used all available paid time off, resulting in a significant loss of pay. While Ms. Nolan Graber was out of work on FMLA leave, CEO Hayes hired a replacement for her; the new employee's role matched Ms. Graber's job description, if not her title, and made CEO Hayes' intentions toward Ms. Nolan Graber very clear. Therefore, when her FMLA leave was exhausted, and she had no further paid time off to take for her recovery, Ms. Nolan Graber was forced to resign from her position.

37. As a result of that constructive discharge, Ms. Nolan Graber suffered time out of work, unable to find a comparable position between November 8, 2023, through November 13, 2023.

38. Furthermore, Ms. Nolan-Graber was left with no choice but to accept a position on November 13, 2023, which forced her to take a significant reduction in salary, as well as several steps backward in her career. As such, Ms. Nolan-Graber continues to experience financial losses of a significant nature.

39. The aforementioned acts are in violation of applicable federal and state laws, including Title VII.

## AS AND FOR A FIRST CAUSE OF ACTION
## As to Defendant Cayuga

**Retaliation in the form of Hostile Work Environment and Constructive Termination for Protected Complaints in Violation of Title VII 42 U.S.C. § 2000e *et seq***

40. Plaintiff repeats, realleges, and incorporates by reference each and every allegation, in each and every aforementioned paragraph, as if fully set forth herein.

41. The Defendant retaliated against Plaintiff in violation of her rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* for participating in protected activity by partaking in an investigation of age discrimination against CEO HAYES, made by Ms. Sheedy.

42. Defendant constructively terminated Plaintiff due to her participating in protected activity by partaking in an investigation of age discrimination against CEO HAYES, made by Ms. Sheedy.

43. Plaintiff suffered severe emotional distress as a result of the hostile work environment and constructive termination.

44. Plaintiff suffered significant economic loss as a result of the constructive termination of her employment by Defendant.

45. Defendant should also be liable to Plaintiff for punitive damages since Defendant was intentionally and recklessly indifferent to Plaintiff's rights, in causing and creating a hostile work environment and constructively terminating Plaintiff.

46. Defendant engaged in retaliation with malice and with reckless indifference to the right of the Plaintiff to be free from such retaliation.

47. Defendant retaliated in the face of a perceived risk that their actions would violate federal law.

**AS AND FOR A SECOND CAUSE OF ACTION**
**As to all Defendants**

**Violation of New York State Human Rights Law (NYSHRL),**
**New York State Executive Law § 296(7)**
**Retaliation for engaging in Protected Activity in the form of Hostile Work Environment and Constructive Termination**

48. Plaintiff repeats, realleges, and incorporates by reference each and every allegation, in each and every aforementioned paragraph, as if fully set forth herein.

49. New York State Executive Law § 296(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate against any person because he or she person has opposed any practice forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

50. During the period of Plaintiff's employment, Defendants were subject to the provisions of the NYSHRL.

51. A plaintiff makes a *prima facie* case for retaliation under the NYSHRL by showing that (1) she engaged in a protected activity, (2) the employer was aware of the protected activity, (3) the plaintiff suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse or disadvantageous action.

52. Plaintiff engaged in protected activity by partaking in an investigation of age discrimination against CEO HAYES, made by Ms. Sheedy.

53. Defendant terminated Plaintiff due to her participating in protected activity by partaking in an investigation of age discrimination against CEO HAYES, made by Ms. Sheedy

54. By the actions described above, defendant violated the NYSHRL.

55. Plaintiff suffered severe emotional distress as a result of the hostile work environment and termination action.

56. Plaintiff suffered significant economic loss as a result of the termination of her employment by Defendant.

57. Defendant should also be liable to Plaintiff for punitive damages, since Defendant was intentionally and recklessly indifferent to Plaintiff's rights in terminating her.

58. Defendant engaged in retaliation with malice and with reckless indifference to the right of the Plaintiff to be free from such intentional retaliation.

59. Defendant discriminated in the face of a perceived risk that their actions would violate state law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demands judgment in her favor against Defendant as follows:

A. Declaring that Defendants have engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by federal and New York State law.

B. Awarding Plaintiff compensatory damages for all back and future loss of wages, lost income, benefits, retirement losses, stock benefits losses, pain, suffering, stress, humiliation, mental anguish, emotional harm and personal physical injury and physical

sickness, as well as damage to her reputation, damage to career path, and loss of income stemming therefrom;

C. Awarding Plaintiff liquidated damages;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, litigation costs, and expert/consultant fees;

F. Awarding Plaintiff pre- and post-judgment interest; and

G. Awarding Plaintiff such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury with respect to all issues properly triable by jury.

Dated: April 3, 2024
       Albany, New York

                                    **HARDING MAZZOTTI, LLP**

By: _Kelly A. Magnuson_
      KELLY A. MAGNUSON, ESQ.
      *Attorneys for Plaintiff*
      P.O. Box 15141
      Albany, New York 12212
      Tel.: (518) 862-1200
      Email: Kelly.Magnuson@1800law1010.com

TO:    CAYUGA HOME FOR CHILDREN,
         D.B.A. CAYUGA CENTERS
         101 Hamilton Avenue,
         Auburn, New York 13021

         EDWARD HAYES
         101 Hamilton Avenue,
         Auburn, New York 13021