UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHRYN NOLAN GRABER,

                    Plaintiff,

          -v-                          5:24-CV-468

CAYUGA HOME FOR CHILDREN,
doing business as Cayuga Centers,
and EDWARD HAYES,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

HARDING MAZZOTTI, LLP                  KELLY A. MAGNUSON, ESQ.
Attorneys for Plaintiff
P.O. Box 15141
1 Wall Street
Albany, NY 12212

BOND, SCHOENECK & KING, PLLC           JEREMY M. SHER, ESQ
Attorneys for Defendants
350 Linden Oaks, Third Floor
Rochester, NY 14625

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On April 3, 2024, plaintiff Kathryn Nolan Graber ("Nolan Graber" or "plaintiff"), a former employee of the Cayuga Home for Children, doing business as Cayuga Centers ("Cayuga"), filed this civil rights action against defendants Cayuga and Cayuga's Chief Executive Officer Edward Hayes ("CEO Hayes").

Nolan Graber's initial complaint alleged claims for retaliation, retaliatory hostile work environment, and constructive termination for protected complaints under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL").[1]  Dkt. No. 1.

On July 26, 2024, Cayuga and CEO Hayes (collectively "defendants") moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Nolan Graber's amended complaint.  Dkt. No. 14-1.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 14-1, 17, 18.

---

[1] While Plaintiff has alleged one claim under Title VII and the NYSHRL for "retaliation in the form of hostile work environment and constructive termination for protected complaints," the Court will review this as three distinct claims for 1) constructive discharge, 2) a hostile work environment, and 3) retaliation.  Conceivably, Plaintiff's complaint could have alleged up to four distinct claims for 1) hostile work environment, 2) retaliation, 3) constructive discharge, and 4) sex-based discrimination.  However, "plaintiffs . . . are the masters of their complaints." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

## II. **BACKGROUND**

On July 31, 2015, Nolan Graber was hired by Cayuga and, at all times relevant to this matter, served as Vice President of Human Resources ("HR"). Am. Compl. ¶ 12.  Over her approximately eight years at Cayuga, Nolan Graber's records reflected an excellent performance history and above-average performance reviews.  *Id.*

In early 2023, Cayuga's Chief Operating Officer Ann Sheedy ("COO Sheedy") submitted complaints against CEO Hayes to Cayuga's Board of Directors ("Board") alleging that she had been discriminated against on the basis of her age.  Am. Compl. ¶ 15. It is unclear how, or to whom, COO Sheedy submitted this complaint or precisely what CEO Hayes' role was in the alleged age discrimination complaint.  On February 20, 2023, CEO Hayes was put on administrative leave as a result of COO Sheedy's complaint.  A subsequent Board-initiated investigation into the complaint ran from late February to March 2023.  *Id.*

Cayuga's Board initially suggested that Nolan Graber and her department investigate COO Sheedy's claims.  Am. Compl. ¶ 17.  But Nolan Graber declined this request, believing that doing so would be both a conflict of interest and reflective of bias.  *Id.* ¶ 18.

Ultimately, at the behest of Cayuga's HR team, the law firm Bond, Schoeneck & King PLLC ("BSK") was retained to investigate COO Sheedy's

age-discrimination claims.  Am. Compl. ¶ 19.  On March 3, 2023, as part of this investigation, two BSK attorneys interviewed Nolan Graber in her capacity as Vice President of HR.  *Id*. ¶ 20.  At the outset, plaintiff informed the BSK attorneys that "she was extremely concerned that the interview would result in retaliatory actions against herself, her husband, or both."[2] *Id*.  The BSK attorneys advised her to cooperate, assuring her that the interview was a legally protected activity.  *Id*. ¶ 20.  Plaintiff proceeded to provide BSK with information that supported Sheedy's age-discrimination claims against implicated CEO Hayes.  *Id*.

Nevertheless, on March 13, 2023, BSK concluded its investigation and informed Cayuga that COO Sheedy's claims were "unsubstantiated."  Am. Compl. ¶ 21.  As a result, CEO Hayes was cleared to return from administrative leave.  *Id*.  The day before, Cayuga's Chief Financial Officer Elizabeth Palin ("CFO Palin") asked the Board how they planned to mitigate any retaliatory conduct, to which the Board's chairman replied that CEO Hayes was returning to Cayuga with fully restored power and authority.  *Id*.

On his first day back, CEO Hayes e-mailed the Agency's executive-level employees that the Board required him to be more involved in decision making.  Am. Compl. ¶ 22.  Nolan Graber contends this was a detour from

---

[2] Plaintiff's husband was also employed by Cayuga and there is a tandem case before this Court regarding his claims against defendants.  *See* Am. Compl. ¶ 25.

the prior six years where Hayes "worked to step away from day to day" involvement at Cayuga. *Id*. CEO Hayes then proceeded to cancel routine check-in meetings between himself and executives, disinvited the same executives from Board meetings, and stripped all "high-level employees" other than himself of independent decision making and/or other authority. *Id*. ¶ 23. In other words, plaintiff contends that CEO Hayes eliminated all of the previously existing checks and balances on his power at Cayuga.

Nolan Graber alleges that CEO Hayes then directed this now-unbridled authority against her. Am. Compl. ¶ 24. Two days after his return, CEO Hayes e-mailed CFO Palin suggesting they evaluate the importance of retaining Nolan Graber's husband, who was also an employee at Cayuga, as he was "pricey." *Id*. ¶ 25. According to the complaint, plaintiff's husband was no more costly to Cayuga after CEO Hayes' suspension than he was before it, *i.e.*, he did not receive any pay raise during the relevant time period. *Id*. Plaintiff contends that, at this time, she believed CEO Hayes intended to punish her, both directly and through her husband, to financially devastate her family. *Id*.

Five days after CEO Hayes' return, he sent an e-mail to Nolan Graber, telling her that the Board had requested that he initiate a review of Cayuga's HR structure and staffing. Am. Compl. ¶ 26. Plaintiff perceived this to be an effort to intimidate and threaten her and she alleges no such concerns were

raised prior to her involvement in BSK's internal investigation. *Id*. Shortly thereafter, at an "all staff" meeting on April 5, 2023, CEO Hayes expressed negative views and opinions about the investigative and administrative process he underwent. *Id*. ¶ 27. CEO Hayes blamed plaintiff and her department for his lengthy administrative leave and for her delay in hiring a law firm to conduct the investigation into COO Sheedy's complaints. *Id*.

On April 11, 2023, Nolan Graber mentioned CFO Palin and Vice President of Human Resources, NYC Christopher Rogers ("VP Rogers") that CEO Hayes was removing her from various job responsibilities in an email to VP Rogers and CFO Palin. Am. Compl. ¶ 28. Thereafter, plaintiff alleges Hayes began to cut her out by sending Rogers numerous emails and requests that previously fell within her purview. *Id*. Around the same time, plaintiff's direct reports contacted Rogers to figure out where to direct their questions. *Id*. ¶ 29. Plaintiff alleges these direct reports observed both a shift in her responsibilities and a change in Hayes' disposition towards her. *Id*.

One of Nolan Graber's job responsibilities was overseeing recruitment, and Cayuga's entire recruiting team reported to her. Am. Compl. ¶ 30. Prior to CEO Hayes's administrative leave, plaintiff contends this team performed at a high level and received nothing but praise from CEO Hayes. *Id*. However, when CEO Hayes returned from administrative leave, he began to constantly criticize the recruiting team via emails on an hourly basis—sometimes as

early as 4 a.m. *Id*. ¶ 31. CEO Hayes also refused to speak directly to plaintiff and acted as though she did not exist. *Id*. ¶ 32.

Nolan Graber alleges that CEO Hayes eventually stripped of her authority and duties as head of HR. Am. Compl. ¶ 33. He unilaterally seized her authority and responsibilities and re-assigned many of her duties to VP Rogers. *Id*. Eventually, all of plaintiff's obligations to Hayes and Cayuga leadership, as well as her direct reports, were delegated to Rogers. *Id*. ¶ 34.

On April 30, 2023, Nolan Graber obtained counsel to contact Cayuga's Board regarding CEO Hayes's allegedly retaliatory conduct. Am. Compl. ¶ 37. In response, BSK contacted plaintiff's attorneys and demanded, even in light of their involvement in the COO Sheedy investigation, to interview plaintiff about her complaint. *Id*. ¶ 38. Plaintiff contends that the Board took no corrective action against CEO Hayes. Instead, plaintiff alleges that CEO Hayes was made aware of her and her husband's attorney's correspondence with the Board and escalated his retaliation against them in response. *Id*.

On May 17, 2023, Plaintiff and her attorney appeared in a video interview before BSK attorneys and answered their questions. Am. Compl. ¶ 39. Nolan Graber participated in this second interview to facilitate Cayuga's response to her complaint and avoid any risk of termination. *Id*. Plaintiff contends this interview was adversarial in nature. *Id*. For instance, the interview

made clear that BSK had discussed plaintiff's claims with CEO Hayes or someone acting on his behalf, the interview felt like an interrogation, and BSK questioned plaintiff about matters aside from the retaliation complaint in an adversarial manner. Around this time, on June 15, 2023, plaintiff's counsel filed a charge of discrimination in violation of Title VII with the Equal Employment Opportunity Commission ("EEOC").[3] Am. Compl. ¶ 5.

Then, in June or July of 2023, Cayuga received a report that a foster care youth under their supervision was allegedly raped by a staff member. Am. Compl. ¶ 35. But due to CEO Hayes's alleged power grab upon his return from leave, he was the only Cayuga figure with the authority to respond to the report or exact discipline on staff members. *Id.* As a result, plaintiff and HR awaited approval from CEO Hayes to act. *Id.* Instead of taking action, *e.g.*, suspending the staff member or ordering anyone else to act, plaintiff alleges that CEO Hayes called CFO Palin outraged that neither Nolan Graber nor HR had immediately suspended the suspected employee. *Id.* ¶ 35.

On July 24, 2023, because of the stress caused by these events, plaintiff took leave from work under the Family and Medical Leave Act ("FMLA").

---

[3] Here, as with COO Sheedy's discrimination claim, it is unclear to the Court what discrimination suffered by plaintiff falls under Title VII. As best as this Court can tell, plaintiff was retaliated against for her involvement in a Title VII investigation stemming from COO Sheedy's complaint. However, the basis for COO Sheedy's underlying claim of age discrimination falling under Title VII is unclear.

Am. Compl. ¶¶ 40–41.  During this time, she received reduced wages and used all of her available paid time off, which resulted in a significant loss of pay.  *Id*.  While she was out on FMLA leave, CEO Hayes hired a replacement employee with a role matching plaintiff's job description, if not her title.  *Id*.  As a result, plaintiff contends that once she had utilized the extent of her FMLA and paid leave, she was "forced to resign from her position."  *Id*.

On January 2, 2024, plaintiff submitted a letter to the EEOC requesting they issue a dismissal and notice of right to sue.  *Id*. ¶ 6.  Shortly thereafter, on January 5, 2024, the EEOC issued the notice, after which plaintiff timely filed their complaint within 90 days of receipt.  *Id*. ¶ 7.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94

(2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV.  **DISCUSSION**

Nolan Graber's amended complaint asserts claims under Title VII[4] and the NYSHRL for (1) retaliation; (2) retaliatory hostile work environment; and (3) constructive termination.  Defendants have moved to dismiss the amended complaint in its entirety.  Defs.' Mem., Dkt. No. 14-1 at 1.[5]

### A. **Constructive Discharge**

First, Nolan Graber has asserted a claim for constructive discharge in violation of Title VII and the NYSHRL.  Am. Compl. ¶¶ 1, 34, 42, 48, 49.

"A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'"  *Knight v. MTA – N.Y.C. Transit*, 2024 WL 4350417, at *24 (E.D.N.Y. Sept. 30, 2024) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)).  Working

---

[4]  Nolan Graber's Title VII claims are not asserted against CEO Hayes because individuals are not subject to liability the statute.  *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219 (N.D.N.Y. 2014).

[5] Pagination corresponds to CM/ECF.

conditions are considered "so intolerable" when "they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (quotation omitted).

Defendants argue that plaintiff has failed to plausibly allege 1) that there is evidence of defendants' intent to create an intolerable workplace that forced her to resign, and 2) that a reasonable employee, subjected to the same conditions Nolan Graber faced at Cayuga, would find them so intolerable that an employee would feel compelled to resign. Defs.' Mem. at 9–11. Upon review, this argument will be rejected. The amended complaint plausibly alleges that, after Nolan Graber participated in the age-discrimination investigation, her relationship with CEO Hayes deteriorated and her role at Cayuga eroded. For instance, upon his return, CEO Hayes repeatedly criticized plaintiff's handling of the investigation. Am. Compl. ¶ 27. CEO Hayes allegedly baselessly critiqued the performance of the HR and recruiting groups plaintiff supervised after he returned from leave. *Id.* ¶¶ 26, 29, 30, 31. Likewise, the complaint alleges that CEO Hayes refused to speak to Nolan Graber or acknowledge her presence—behaviors that did not begin until after the investigation. *Id.* ¶ 32. Further, the pleading alleges that CEO Hayes stripped plaintiff of her job duties and reassigned the employees who directly reported to her. *Id.* ¶¶ 33, 34, 35. Lastly, the pleading alleges that while plaintiff was on FMLA leave, CEO Hayes hired another employee

who held the same job functions, if not the same title, that she did prior to going on leave.  *Id.* ¶ 41.  In short, the pleading plausibly alleges that an objectively reasonable employee would have felt compelled to resign under these circumstances.  Accordingly, defendants' motion to dismiss this claim will be denied.

### B. Retaliation

Next, Nolan Graber asserts claims for retaliation and a retaliatory hostile work environment against defendants under Title VII and the NYSHRL. Am. Compl. ¶¶ 45–64

Title VII and the NYSHRL broadly prohibit employers from retaliating against employees for engaging in protected activity.  *Phillips v. Fashion Inst. of Tech.*, 2024 WL 1005500, at *2 (2d Cir. Mar. 8, 2024); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 231–32 (E.D.N.Y. 2016) (quotation omitted) (noting that the anti-retaliatory provision of Title VII "is construed to cover a broad range of employer conduct").

Plaintiffs may pursue retaliation claims under Title VII and the NYSHRL predicated on a concrete, retaliatory action by an employer *or* on a work environment permeated with retaliatory actions; *i.e.*, a retaliatory hostile work environment.  *Phillips*, 2024 WL 1005500, at *2.  The inherent difference between these two theories of liability is the manner in which the plaintiff must plead and prove their claim: a standard retaliation claim is

predicated upon a single, concrete adverse action while a retaliatory hostile work environment claim allows the plaintiff to aggregate a series of adverse actions. *See id.*

"[T]o survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) "because" he has opposed any unlawful employment practice."[6] *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).[7] As relevant here, a "materially adverse" action is "one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Carr*, 76 F.4th 180 (quoting *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68).

Plaintiff has plausibly alleged that she was subjected to a series of materially adverse actions that, when viewed together, might well have dissuaded a reasonable employee from making or supporting a charge of

---

[6] Though the Second Circuit has not directly addressed whether to apply but-for causation to NYSHRL claims, it has "implicitly applied the but-for standard to NYSHRL claims." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 333 n.7 (S.D.N.Y. 2020) (collecting cases).

[7] Courts generally analyze Title VII and NYSHRL claims together. However, in 2019, the New York State Legislature amended the NYSHRL. While the Court is cognizant of the inherent ambiguity in the changes to the NYSHRL, theories available to plaintiffs under Title VII are generally available under the analogous state law. *See Lee v. Riverbay Corp.*, –F. Supp. 3d–, 2024 WL 4312166, at *11 (S.D.N.Y. Sept. 27, 2024) (noting that the federal civil rights statute serves as a "floor" below which the state law's protections cannot fall). Accordingly, the Court will proceed to analyze Mr. Graber's retaliation claims together.

discrimination. That is especially so when considering the totality of the events that transpired from the time CEO Hayes returned from suspension until the time Nolan Graber left Cayuga. *Carr*, 76 F.4th at 179 (citing *Burlington Northern*, 548 U.S. at 68). While some actions CEO Hayes took were directed at all of Cayuga's executive staff, plaintiff has pleaded a series of actions that call CEO Hayes's motivations into question.

Plaintiff argues that defendants retaliated against her by creating a hostile work environment and constructively discharging her from her role at Cayuga. Am. Compl. ¶¶ 46–48. Defendants argue that plaintiff has failed to plausibly allege retaliatory animus, that a constructive discharge occurred, or that there was a retaliatory hostile work environment. Defs.' Mem. at 5–11.

Nolan Graber alleges that when CEO Hayes returned from administrative leave, he informed Cayuga's executive-level employees (including plaintiff) that the Board wanted him more involved in decision making. Am. Compl. ¶ 22. Thereafter, he cancelled check-in meetings with executives, disinvited executives from Board meetings, and stripped all "high-level employees" of independent decision making and/or authority. *Id.* ¶ 23. CEO Hayes also eliminated all checks on his executive power at Cayuga. *Id.* ¶ 24. Two days after returning, CEO Hayes e-mailed Cayuga's CFO to discuss eliminating plaintiff's husband, whom he termed "pricey," on staff at Cayuga despite his compensation remaining the same as before the suspension—plaintiff

appears to contend this inquiry was part of a pattern of intimidating conduct in response to her involvement in the discrimination investigation regarding CEO Hayes.[8]  Compl. ¶ 25.

In sum, CEO Hayes's inquiry into the termination of plaintiff's husband, his public criticism of plaintiff's handling of his discrimination investigation, his re-assigning of plaintiff's responsibilities, conducting himself as though plaintiff did not exist, and his frequent criticisms of the recruiting team that plaintiff oversaw are sufficient to plausibly allege a claim for retaliation.

In the alternative, Nolan Graber has pursued a retaliation claim on the basis of one concrete adverse action—she was constructively discharged from Cayuga.[9]  Plaintiff participated in the COO Sheedy investigation, and as a result, Hayes allegedly stripped her of her duties and replaced her with another employee.  Am. Compl. ¶ 47.

The second inquiry in the retaliation context is whether there was a causal connection between the protected activity and the materially adverse action or actions.  *Phillips*, 2024 WL 1005500, at *2 (quoting *Carr*, 76 F.4th

---

[8]  The Court infers from this allegation that this inquiry was part of a pattern of intimidating conduct directed at the plaintiff for her involvement in COO Sheedy's discrimination investigation. Am. Compl. ¶ 13.

[9]  While constructive discharge in this matter is comprised of a series of actions taken by the defendants, for the purposes of making a retaliation claim, it constitutes one concrete adverse action. Phillips, 2024 WL 1005500, at *2.  This theory is distinct from the theory underlying plaintiff's retaliatory hostile work environment claim, where multiple actions constitute a series of retaliatory actions that support a materially adverse work environment.  *Id*.

at 180).  As relevant here, the plaintiff engages in a protected activity for the purposes of both Title VII and the NYSHRL when he "(1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under [either statute]." *Jacobs*, 2024 WL 1200002, at *7.

Upon review, plaintiff has plausibly alleged a sudden and unanticipated change in her work conditions that began immediately after her involvement in CEO Sheedy's investigation.  Therefore, plaintiff has set forth a plausible *prima facie* case of retaliation under both Title VII and the NYSHRL, and accordingly, defendants' motion to dismiss both of plaintiff's retaliation claims will be denied.[10]

Nolan Graber has also plausibly articulated a retaliatory hostile work environment claim under Title VII and the NYSHRL.  Am. Compl. ¶¶ 45–64.

To state a *prima facie* case of a retaliatory hostile work environment, the plaintiff must plausibly allege that: (1) she participated in protected activity; (2) of which defendant was aware; and (3) she was subjected to materially adverse retaliatory actions.  *See Carr*, 76 F.4th at 181 ("All that is relevant is

---

[10]  The amended complaint reveals two instances of protected activity: the first, when Nolan Graber participated in the COO Sheedy investigation.  Am. Compl. ¶¶ 18–20.  The second instance of protected activity took place when plaintiff, by way of her attorneys, informed Cayuga's board that she believed she was being retaliated against.  *Id.* ¶ 37.  However, in plaintiff's opposition papers, she refers only to the first instance. *See, e.g.*, *Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 347 (N.D.N.Y. 2000).

whether the actions, taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination."). Notably, the plaintiff does not need to establish that the retaliatory actions were "severe and pervasive." *Id*. Because this is the same standard used above to determine whether there was retaliation, the Court finds that plaintiff has plausibly alleged a retaliatory hostile work environment under Title VII. See *supra*.

Therefore, Nolan Graber has plausibly alleged a retaliatory hostile work environment claim under Title VII and the NYSHRL. Accordingly, defendants' motion to dismiss these claims will be denied.

## V. **CONCLUSION**

Plaintiff has alleged facts that support a plausible inference that defendants constructively discharged her. Plaintiff also has plausibly alleged facts to supports claims that defendants retaliated against her and created a hostile work environment in response to her participation in a protected activity. Accordingly, the Court finds the allegations to be sufficient to support claims for constructive discharge, retaliation and a retaliatory hostile work environment under both Title VII and the NYSHRL.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is DENIED.

2. Defendants are directed to file and serve an ANSWER to plaintiff's

amended complaint on or before December 6, 2024.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  November 22, 2024
        Utica, New York.